Okay, now let me start at the beginning by noting that the third member of the panel is here on video, and that's Judge Alarcon, whom you see. And I should also ask you, you're the one who had the bicycle accident? Yes, Judge. Actually, my elbow is much better. I didn't have to have surgery. Thank you. Oh, good. You're feeling better. It's one of the reasons I don't get on the bicycle anymore. Okay. Now, you have 15 minutes. Do you want to reserve any time? Yes, if I could, Judge. I'd like to reserve four minutes. Four minutes. Okay. Pat, do you have that? Okay, thank you. Okay, now let me tell you, we of course have read the briefs. It's known as a hot court, so you can get right into your argument. I wasn't. Thank you very much, Your Honor. Judge, I can't tell you how much we support the importance of the issues that are raised by the Supreme Court before we hear it. Throughout the trial, there have been many, many law-determining residents. Many of them detained, many of them not represented by counsel. Yeah, well, that all depends on what really is the issue in this case, so why don't you proceed? In the first instance, Judge, the proceedings in the court below do not comply with the statute regarding notice to the petitioner of the charges against him, which are a matter of law. Well, when you say the charges against him, I mean, as I understand your opponent's briefing, the charges remain the same. They're the 97 charges, and the 91 and 92 convictions are in play here only insofar as they affect the stop-time rule. So are you saying that your client didn't get notice of the 97 charges, or are you saying that somehow the 91 and 92 convictions are charges that needed to be noticed? Listen to me, Judge, what I mean is the 91 convictions should have been alleged and proven in the proceedings. The petitioner should have been put on notice. Why do they matter? I know your whole brief is directed toward the 91, 92 charges, but isn't he removable as a result of the 97 charges? Judge, he's removable based on those charges. Okay, so why do we worry about the 91, 92 charges? If the government applies the stop-time rule retroactively in Mr. Jurado's case, those 91 arrests, conviction in 91 and 92, if they're both determined to be crimes involving moral perpetrators, would serve to stop his time. If they're not applied retroactively, Mr. Jurado would have had 11 years of lawful residence by the time he was placed in proceedings. Excuse me, by the time the statute was passed in 96, and 16 years by the time he was actually placed in proceedings. I don't understand. You can explain why I don't understand. If I understand your argument, correct me if I'm wrong, the argument here is about eligibility to even be considered for cancellation of removal, right? Yes, sir. And if the 97 convictions were the only thing in play, I think everybody concedes he'd be eligible for consideration, right? But because of the 91 convictions, and I'm not sure of the timing because sometimes they're called the 91 convictions, and sometimes it's a 91 conviction and a 92 conviction, but for ease of reference, let's just call them the 91 convictions. Because of those falling as they do, the government was able to assert and persuade the VIA that the stop time rule kicked in upon the commission of those crimes, and therefore made him ineligible for cancellation of removal. Is that the state of play? Yes. And your assertion, among other things, is he deserved notice of that. But let me go past that and ask you, why isn't this case controlled by the decision in Briseno-Flores, and the decision a couple of months ago that your opponent sent to us under cover of the 28J letter that referenced, if I can find it, the new case Arca-Peneda? Arca-Peneda. It's retroactive. Why are we arguing? Because in this instance, Mr. Dorado is a lawful permanent resident, and applying this court's precedent in Adkinson, there shouldn't be a requirement to show that he actually relied upon the law that was in effect in 91 when he took office, when he fled. If the stop time rule had not applied retroactively, there's no doubt that he would become eligible. Congress made it very clear when they passed the interim rules, the transitional rules, and when they defined the retroactive applicability of the aggregated felony definition, that those were to be applied retroactively. In Mr. Dorado's case, the concern of Congress, which was that the non-citizen removal would delay the proceedings in order to qualify for relief, isn't present. By the time that rule was passed in 96, Mr. Dorado had already satisfied the standard of necessary cancellation of removal. By the time it was placed in proceedings in 2001, 16 years, so there is no delay. If the rule is not applied retroactively, he's clearly eligible for cancellation. But that argument is pinned on an assumption that Congress intended to make some distinction, which is not apparent, at least not to me, in the statute. Is there something in the statute that makes you say it doesn't apply to lawful permanent residents? Because in Congress, my understanding of it, under the Landgraf analysis, is that if Congress has personally made it retroactive, it should be applied retroactively. If Congress hasn't made it retroactive, there's something against the retroactive application. And if Congress specifically made this kind of rule after the fact, retroactively, in addition to the condition rules, and with respect to the definition of an aggravated homicide, they could use the language, they did use the language, and the final rule needed to explain the deportation statute, this rule should not be applied by Congress. It requires the survival of his property interest in the status of a lawful permanent resident. One of the other concerns we have, which we believe is very important, is the bifurcated nature of these proceedings. In the proceedings below, this is not an instance where Petitioner's Counsel sought to evade the issue of what the significance of these convictions were. They were raised early on before the immigration court. The court set a briefing schedule. Briefs were submitted. The government never submitted a brief in opposition. After review of it, the judge indicated that based on the briefs that he'd seen, he determined that the Petitioner was in fact eligible for cancellation and set it down for a merit hearing. It was adjourned on a number of occasions before that hearing. The only time that the government affirmatively asserted that the Petitioner was not eligible for cancellation or removal was on the morning of the merit hearing, three years later. Now when the Petitioner was demanded back to custody, at some point there was a concern expressed by the government once again that those convictions from 1991 could preclude his eligibility for removal. But they never affirmatively asserted it. They never charged it. Why would they have to charge it? These talk about charging again, but if I understand the statute correctly, these crimes have their effect not because they're charged, but just by the fact that they exist. It's not a conviction. It's not a guilty plea or anything. It's just like you commit that crime and by operation of law under the statute, your residence time comes to a stop. Why do you speak in terms of charging in your briefing here and in your argument? In two reasons. First is if you look at the statute under 239 of the Act, it specifically says that in the notice to appear, the government must state the legal authority under which the proceedings are conducted and under subdivision C, the act of conduct alleged to be in violation of law. It does not limit the terms of conduct to the grounds of the removability law. And the case law that it interpreted, including the matter of Fortese and the prior decision to the court, had indicated that if the government was to allege that there was a conviction which disqualified the person from eligibility for relief, it was obligated to include it. So Fortese antedates. It's before the stop time rule changes, right? Yes, sir. And the BIA says, look, we've got a new statute and looking at the new statute. And the language is different. But what's so confusing about the board's decision, they spent a great deal of time speaking about the person being rendered inadmissible or removable. And they also stated in their decision that clearly when Congress said that the person is, quote unquote, is deportable, that this requires that the other charges be alleged in the notice to appear. And yet, Mr. Gerardo was placed in removal proceedings based upon the criminal grounds of removability set forth in 237 AP of the act. And at the bottom of the list of each of those grounds of removability, it says, if you are convicted of this, then the alien is deportable. So that very same language is still present in the grounds that he was charged with. Mr. Tarasakis, I didn't want to interrupt you, but your red light is on and I do have some questions. Mr. Gerardo was charged or pled guilty and was convicted on January 6, 1997 of criminal attempt to commit theft. And on June 10, 1997, he pled guilty to criminal conspiracy to commit retail theft. Are those convictions that affect, are they crimes of moral turpitude? Yes, ma'am. They are. Then couldn't he be removed tomorrow on the basis of those crimes? I'm going back to the question I asked at the very beginning. Even if he had been able to get relief before, couldn't they remove him tomorrow on the basis of those 1997 convictions? Well, clearly he wouldn't be eligible for, you wouldn't have any retroactivity issue when you're talking about a 1997 conviction, right? And I would agree with you, but with respect to the earlier convictions, the law was such that at the time of those convictions, he was eligible for 212C relief. Yeah, but suppose he had gotten 212C relief, which we never know because it's discretionary with the Attorney General or the Attorney General's delegate. If he committed new crimes after that happened, couldn't they, I mean, he hasn't gotten citizenship. Couldn't they remove him? He would be ineligible for what? Ineligible? He would be ineligible to apply for another waiver. Ineligible to apply for discretionary relief again. But I think what's important is... Yeah, but so why does that mean that they can't remove him tomorrow on the basis of the 1997 convictions? Because Your Honor, and I'm apparently not making a point here. No, well... Under the statute prior to the passage of the stop time rule, Mr. Jurado would have been eligible for the 212C waiver. Okay, the waiver was for what? Crimes involving immoral purposes. Yeah, okay, but it was from removal. They couldn't deport him, or now the word is removed, right? Okay, but if he committed crimes after that, even if he had gotten 212 relief, he had gotten a waiver based on the 91 crimes. But the 97 crimes come after that. Why can't he be, I mean, is there a statutory reason why he couldn't be removed because he has now committed crimes that involve moral turpitude? Judge, I would submit that prior to 212C, as well as under the cancellation, the non-citizen was afforded one chance, one proverbial bite at the apple for relief. Okay, so he got the relief based on the 91 crimes. But he didn't get it. That's the argument. Uh-huh. Judge, what we're saying is the 212C rate waiver continues... Okay, well, but, all right, but then if you go to the 97 crimes, you don't have any retroactivity issue. You can't complain about retroactivity there. Judge, I would agree with you, but the point is the 91 convictions, he would have been eligible for a waiver. This is simply a continuation of the pre-existing form of relief from the... Well, let's see what the government argues, and we'll hear you back on your rebuttal. Oh, yes, Judge Alicorn. Go ahead, by all means. Now, so when I corroborated the fact that the musician conceded removability... He conceded removability. Yes, Your Honor. At the earliest outset, and requested relief, and that was a threshold determination made. Now, what was the basis? I couldn't find it in any of the cases. What was the basis for the concession of removability? Judge, quite frankly, we believe that there was an interest in the court to promptly resolve the issue of his removability and his eligibility for relief. And we raised it at the outset. We sought the relief that we believed he was eligible for. We briefed it, and there was a determination made by at least two judges. I'm not sure that answered Judge Alicorn's question. Judge, we conceded the removability. Yes, but he wants to know why. The basis was the 97, right? On the 97 and 96 convictions, yes, Your Honor. Not the 91. The one, the 91 we specifically alleged were not crimes involving moral prejudice. You subsequently also conceded removability on the basis of a 2005 conviction, right? Correct. So... So why isn't he removable? It goes back to my question, why he isn't removable. And your answer to that is that you think you're entitled to ask for a waiver of removability. Is that what's happened here? Judge, at the end, I think at the heart of it, if the law was not meant to be applied retroactively, if long-term legal permanent residents such as Mr. Gerardo were to be afforded an opportunity to continue to apply for the new relief, in other words, if Congress didn't expressly make it retroactive, he would be eligible for cancellation. And in terms of that issue of retroactive application, it would not expressly make retroactive. We might have a question or two for you, Your Honor, but... Okay. Why don't we hear from the government? Mr. Bless. Good afternoon. My name is Jesse Bless. Thank you. The petitioner in this case sought cancellation of removability. The court ruled that in April 1997, to all cases initiated after that date. The petitioner's case was initiated in this case in October of 2001. He sought the relief of cancellation of removable. The Attorney General's position is he needed to prove his eligibility by meeting the requirements for that form of relief. Can you address the transitional versus permanent rules point, which has become, I think, for me at least, it's the heart of this. I hear your opponent, Mr. Terzacca, say that, sure, there's percent of Flores and the, what is that other one? Arcata-Piñera. Arcata-Piñera cases. And those clearly say that the stop time rule is retroactive, but he says those cases, if I've understood him correctly, and I'll ask him to correct me if I'm wrong, those cases really don't apply here because those cases were somehow decided within the framework of cases governed by transitional rules, and this case is not, and therefore, we're not bound by that and we shouldn't treat it as retroactive. Maybe you could explain transitional versus permanent rules, whether he's right in saying that this is in a different procedural posture than the other case, and whether he's, and why you think he's wrong when he says, because this is a case under permanent as opposed to transitional rules, 1292, excuse me, 1229BD1 is not retroactive. Speak up a little bit. Yeah, you might need to pull that up so you're speaking right in. There were cases that were pending, and so they made up these transitional cases that were pending as of this time. Congress reformed immigration law, and so if you had a case that was in the pipeline, those cases would be governed by a set of transitional rules, and there are many forms of relief and overlapping forms of relief. Okay, where does Mr. Jurado fall within that? He falls within the permanent rule because his case was enacted, I mean, was initiated after April 1, 1997. In fact, his case began in October of 2001. This is clearly a permanent rule. And why is your opponent wrong when he says, hey, Congress specifically said the transitional rules would be retroactive, but they didn't say that to the permanent rules, and therefore, under the rule of lenity and sound policy, you should assume that Congress didn't mean for the stop time rule to be retroactive when applied to permanent cases. What's wrong with his argument? Well, the transitional rule, there was a need to make clear exactly what application of the stop, if the stop time rule was going to apply to those certain cases. And so with another statute, Congress made clear this rule was for transitional cases. It was well understood that cases initiated after April 1, 1997 would apply the statutory terms of the new relief, cancellation of removal. It was understood. Understood by whom and why? It was understood because Congress repealed the relief that was in existence prior, and replaced it instead with cancellation of removal. And for someone to meet their burden of proving eligibility, they would necessarily have to show all of the requirements, including that their time did not stop. For example, if the petition was correct in this case, he would be able to apply for this new form of relief today, but not comply with all of its elements. He would be able to pick and choose. He would be able to say, well, I'm a lawful permanent resident. I haven't been here to have an aggravated felony. And I know that there's a stop time rule, and it's my burden to show that it didn't stop. But it doesn't apply to me, even though he's applying for the relief after April 1, 1997. And this case began after that date, after that time. So the real question is that he's applying for relief, that Congress specified what the elements were, but he suggests that he doesn't need to comply with that. So in a sense, you're saying it's not – if I'm understanding you right, you seem to be saying it's not really a question of retroactivity in that context, because it's not as if he – it's he wants the relief that exists under the new statute, but he doesn't want the responsibility and burden of proof that goes with getting that relief under the new statute. That's correct, Your Honor. And in fact, in Landgraf – I just want to quote that 511 U.S. 269, so Landgraf 18, and they specify, when the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. And I interpret that to mean – I believe it does say – listen, we're talking about prospective relief. He's not applying for 212 states. This isn't a suspension of deportation case. This is all relief that was available prior to 1997. He's seeking something that was changed, that began in 1997. There is no 212C anymore, right? Absolutely not. It's been abrogated. Right. Now, I don't want to have confusion, but I will say that had the petitioner brought himself to the attention of authorities and applied for 212C, I'm not – When? I mean that he was eligible before 1997. That's totally different. What he wanted to do – and I only add that to prove that – what he wanted to do was he wanted to apply for this new form of relief, cancellation of the rule. He never made an argument that he wanted to apply for any other form of relief. It would have been called what under the old regime? I believe he would have – Suspension of deportation. Suspension of deportation and then 212C relief. And 212C relief would have given him what? It would have essentially waived this round of removal of your home that they would call deportment. Why isn't it the same? I mean, what's different about what he can get under cancellation of removal and the former 212C relief? Well, there are many things that are different. Well, what's the main thing that's different? For this purpose, the main thing was prior to 1997, if someone sought 212C, their time never stopped. Whether they were issued with an order to show cause or they committed crimes before, their time never stopped. So what they were able to do, what Congress specifically identified in enacting a re-run in Edithville, was they were able to kind of stay in the shadows until they accrued enough time. And then once their proceedings began, they said, well, I'm eligible because I've been here. Well, what Congress saw to do by it is saying, your time stops either when you're issued a notice to appear, a charging document, or, whichever is earlier, when you have committed a certain crime. We're going to put an endgame to this. And cancellation of removal also has many other provisions. But for the purpose of this case, that's a major, major, major difference. And so when someone like the petitioner was placing a move to stop cancellation of removal, he needed to meet his burden when he was eligible. And to do so, he wouldn't be applying for cancellation of removal any other way. It's as if he would say, well, I can name three out of the four elements, but I can't name the fourth one. But give it to me anyway. That's simply not what Congress intended when it enacted and replaced the forms of relief available for a certain amount. So your argument at bottom is Congress wouldn't have said something about it being, about retroactivity being, excuse me, about stop time being retroactive because at that point, under the permanent rules, any relief being granted was prospective relief, so retroactive issues don't even arise. You specifically did state in the re-run that these new provisions take effect in any cases on or after April 1st, 1997, which explains the precedent in this court in Pinho and Pondo and most recently out of Nevada, I believe. It says these new provisions apply after April 1st, 1997. Is that plain and simple? Okay. Judge Alecant, do you have any questions of the government? Thank you.  We'll hear rebuttal, please. Thank you, Your Honor. With respect to the discussion of the petition establishing the insolvency, the cancellation of removal statute for permanent residence simply states the petitioner must establish that he's resided continuously in the United States for seven years, at least five years as a lawful permanent resident, and that he's never been convicted of an aggravated felony. In 2001, when he was placed in the proceeding, he satisfied all of the elements under the statute as applied to the cancellation of removal. With respect to the issue of Congress's desire to terminate the accrual of physical presence through passage of this law, I will be predicating it on the criminal commission of the act. That was designed, even according to the legislative history, for the purpose of preventing an undue delay by people who were placed in the proceeding, so that even though they delayed the proceeding until the case was on appeal, even as long as it wasn't a final order, they could ask to remain in the case and now apply for this new relief. That is simply not the case with Mr. Giroir. How do we get around the specific language of the statute which talks in terms of all? I mean, if I can put my hand on it, but I think it says that, well, you heard your opponent just quote it, that it's to apply to all cases after that date. I'm not doing justice, maybe, to your opponent's argument, but you heard him say it. There isn't even a retroactivity issue in the case because he came in after the statute was in place, and he had to, in order to get the relief he seeks, meet every element, and he can't meet one of those elements. There is a clear difference in the language of the statute with respect to transitional rules and respect to the permanent rules. Are you talking about renders versus is? Is that what you're talking about? Actually, I'm talking about the second statute where it says in the transitional rules, these rules apply to all cases on, before, instituted on, before, or after. The permanent rules do not have the language of applying specifically retroactively, and our argument is, and we cease to rule in support of that, is if Congress issues that amendment, it shouldn't be read into the statute because it's depriving the resident of a very important right, the eligibility to apply for relief. Well, respond then to the Landgraf argument, which is, Landgraf tells you this applies, and because it's prospective relief, retroactivity is an issue. I'm paraphrasing, but that's what Mr. Bluss said. Landgraf said if the law attaches new consequences to actions that have been completed, then it's presumptively retroactive, it's presumptively prospective. Isn't that what's going on here? I believe it is. In this case, Mr. Giroir's conduct had already been committed. The statute was passed after the convictions, five years later, and essentially what they're trying to do is apply retroactively and attach those new consequences to Mr. Giroir. Well, maybe I'm missing it, but here's what I understand them to be saying. I guess I hear them to be saying, look, if Mr. Guaro Delgado had wanted the former relief, the 212C or the suspension of deportation relief, and he'd come in and ask for that, there would have been things he needed to prove with respect to that, and that would have maybe raised this transition kind of rule. But he didn't do that. He came in asking for the only thing he could ask for, because his case came up after 1997, and that was for this new kind of relief that we call cancellation of removal. And that's the prospective application of the statute that Congress intended. And the stop-time rule is not really being applied retroactively in that instance. It's just something he has to prove. He has to prove he's been lawfully in the country for that period of time, and he can't do that under this new system, under the new stop-time rule. Now, where's the logical flaw, if there is one, in that argument? And if it wasn't, here's the challenge I'm having with your argument. It assumes that Congress meant to take the cases that were pending as of the time that Herrera was passed, and that Congress was careful to specify, hey, we do need it to be retroactive, and that it was actually going to only make it retroactive for those cases, but that going forward ad infinitum, on the permanent basis, it meant for those people to have better rights or more rights or more lenient rights than the people caught in the transition. Where's the logic in thinking Congress intended that? Primarily those cases which were pending before the passage of the new law. Many of them dealt with people who were not even lawful permanent residents that were applying for suspension of deportation, had never approved a status as a lawful permanent resident. For those who were eligible for 212C on the date that this statute was passed, they were eligible for climate. In other words, if on the date the law was implemented, or the stop time rule was implemented, the day they approved the settlement, they certainly would have been eligible. In addition, in St. Cyr, the Supreme Court recognized that there was an expectation in the community, not an individualized expectation, but a presumption that aliens were aware that they could continue to approve presence for the cancellation, excuse me, for the 212C. There was no requirement that they were permanent residents. Are you arguing that Congress could never implement a stop time rule because St. Cyr says that there's some reliance factor that immigrants are entitled to? Judge, I would submit that in this case, Congress, as I've argued, Judge, that they make the aggravated felony bar retroactive because that language was the same language as the transitional custody, the transitional rule, but they did not make it specifically applicable to lawful permanent residents. And I argue that the cancellation of the rule was simply a continuation of what had previously been available for long-term lawful permanent residents, 212C waiver. Any more questions? Judge Alarcon, do you have any questions? Thank you very much. We'll take this case under advisement. And because...